UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- X

RASHAD HUDYIH,

                    Petitioner,

          - against -

JOSEPH T. SMITH, Superintendent,
Shawangunk Correctional Facility,

                    Respondent.

------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7|1|15

**OPINION AND ORDER**

12-CV-1761 (SAS)

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.     INTRODUCTION

         Petitioner Rashad Hudyih brings this pro se habeas corpus petition
pursuant to section 2254 of Title 28 of the United States Code challenging his state
court conviction following a jury trial in County Court, Westchester County.[1]
After being convicted of attempted murder in the second degree[2] and criminal
possession of a weapon in the second degree,[3] Hudyih was sentenced to a term of

---

[1]      See Petition for Writ of Habeas Corpus at i ("Pet.").

[2]      See N.Y. Penal Law ("NYPL") §§ 110, 125.25(1).

[3]      See id. § 265.03(1).

-1-

twenty years in prison, followed by five years of post-release supervision.[4]

On March 3, 2012, Hudyih filed the instant Petition, challenging his conviction on the following grounds: (1) that the verdict was not supported by sufficient evidence; (2) that the trial court's restrictive ruling as to a prospective witness for the defense deprived Hudyih of his right to present evidence on his own behalf; (3) that Hudyih received a harsh or excessive sentence; (4) ineffective assistance of appellate counsel; and (5) ineffective assistance of trial counsel.  For the following reasons, the Petition is denied.

## II.   BACKGROUND

### A.   The Offending Conduct

In late 1999 or early 2000, Hudyih hired William Richie to drive him to and from work as a bartender in lower Manhattan.[5]  They later became friends, sharing somewhat frequent meals and socializing together.[6]  Eventually, Richie began brokering drug deals for Hudyih.[7]  By April 2005, the relationship between

---

[4]   *See* Pet. at i.

[5]   *See* Brief for Appellant Hudyih ("Appellant Br."), Ex. B to Respondent's Memorandum of Law and Exhibits ("Respondent's Exs."), at 1.

[6]   *See id.*

[7]   *See* Trial Transcript ("Tr.") at 289–290, 342–343.

the men had soured.[8]  On April 11, 2005, at approximately 11:20 PM, Hudyih called Richie and asked if they could meet.[9]  Hudyih and Richie met in a parking lot behind 345 and 355 Bronx River Road, Yonkers, Westchester County, New York.[10]  After an argument, Hudyih shot at and hit Richie three times.[11]  Richie sped away.[12]  As a result of blood loss, Richie passed out after driving less than a half-mile.[13]  Richie's car veered into the opposite lane and struck cars parked at the curb.[14]

As a result of the shooting, Richie suffered internal injury to his small intestine, colon,  and bladder.[15]  Richie survived and eventually cooperated with the police investigation.[16]  A warrant was issued for Hudyih's arrest,[17] and police

---

[8]     *See id.* at 290, 338, 341–344.

[9]     *See id.* at 297–298, 638.

[10]    *See id.* at 301, 360–362.

[11]    *See id.* at 304, 308, 365–366, 371–372, 469–470, 481.

[12]    *See id.* at 44, 47, 73–74, 307–308, 376.

[13]    *See id.* at 97–98, 113–114, 123, 186, 201, 259–260, 308–309, 313, 377, 509, 549.

[14]    *See id*.

[15]    *See id.* at 131–133, 157.

[16]    *See id.* at 317–318, 608–609, 631–632.

[17]    *See id.* at 536–537, 652.

apprehended him four months after the shooting.[18]

### B.    Procedural History

On August 1, 2006, Hudyih was convicted by a jury for attempted murder in the second degree and criminal possession of a weapon in the second degree.[19]  Hudyih appealed to the Appellate Division, Second Department, on the grounds that: (1) the verdict was not supported by sufficient evidence; (2) the trial Court's ruling as to a prospective witness was restrictive; and (3) the imposed sentence was excessive.  On March 31, 2009, the Appellate Division affirmed the judgment.[20]  Hudyih sought further leave to appeal to the New York Court of Appeals on the ground that the verdict was not supported as a matter of law by sufficient evidence to disprove the justification defense.[21]  On September 8, 2009, the New York Court of Appeals denied leave to appeal.[22]

On October 15, 2010, Hudyih made a pro se Motion for a Writ of Error Coram Nobis to the Appellate Division, Second Department, on the ground of ineffective assistance of appellate counsel for failure to raise ineffective

---

[18]    *See id.* at 456.

[19]    *See* Pet. at i.

[20]    *See People v. Hudyih*, 876 N.Y.S.2d 156 (2d Dep't 2009).

[21]    *See* Pet. at ii.

[22]    *See People v. Hudyih*, 13 N.Y.3d 797 (2009).

assistance of trial counsel.[23]  The Appellate Division denied the motion on April 5, 2011, without holding a hearing.[24]  On April 20, 2011, Hudyih filed a request for leave to appeal the Coram Nobis motion to the New York Court of Appeals.[25]  The New York Court of Appeals denied leave on November 23, 2011.[26]

On November 30, 2010, Hudyih filed a motion in the County Court, Westchester County under New York Criminal Procedure Law ("NYCPL") § 440.10(1)(h) on the ground of ineffective assistance of trial counsel for failure to obtain existing evidence showing that the victim was under the influence of a controlled substance at the time of the shooting.[27]  The County Court, Westchester County denied the motion on May 25, 2011, without holding a hearing.[28]  On June 9, 2011, Hudyih requested leave to appeal the § 440.10 motion to the Appellate Division, Second Department.  The Appellate Division denied leave on February

---

[23]     *See* Pet. at iii.

[24]     *See id.* at iii, v.

[25]     *See id.* at v.

[26]     *See id*.

[27]     *See id.* at iii.

[28]     *See id.* at iii, v.

23, 2012.[29]  On March 2, 2012, Hudyih filed the instant Petition.[30]

## III.   LEGAL STANDARDS

### A.   Deferential Standard for Federal Habeas Review

This petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA").  The AEDPA provides that a federal court may not grant a writ of habeas corpus to a prisoner in custody pursuant to the judgment of a state court with respect to any claim, unless the state court's adjudication on the merits of the claim: "(1) was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;"[31] or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[32]

A state-court decision is contrary to clearly established federal law, as determined by the Supreme Court, in the following two instances:

First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by

---

[29]   *See id.*

[30]   *See id.* at 6.

[31]   28 U.S.C. § 2254(d)(1).

[32]   *Id.* § 2254(d)(2).

this Court on a question of law. Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours.[33]

With regard to the "unreasonable application" prong, the Supreme Court has stated:

> [A] state-court decision can involve an "unreasonable application" of this Court's clearly established precedent in two ways. First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.[34]

In order for a federal court to find a state court's application of Supreme Court precedent to be unreasonable, the state court's decision must have been more than incorrect or erroneous. Rather, "[t]he state court's application of clearly established law must be *objectively unreasonable*."[35] This standard "'falls

---

[33]     *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

[34]     *Id.* at 407.

[35]     *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (emphasis added). *Accord Renico v. Lett*, 559 U.S. 766, 773 (2010) (stating that "[t]his distinction creates 'a substantially higher threshold' for obtaining relief than *de novo* review") (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)); *Williams*, 529 U.S. at 409; *Harris v. Kuhlman*, 346 F.3d 330, 344 (2d Cir. 2003).

somewhere between merely erroneous and unreasonable to all reasonable jurists.'"[36]  While the test requires "'[s]ome increment of incorrectness beyond error, . . . the increment need not be great; otherwise habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence.'"[37]  Furthermore, section 2254(d) applies to a defendant's habeas petition even where the state court order does not include an explanation of its reasoning.[38]

> Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.  This is so whether or not the state court reveals which of the elements in a multipart claim it found insufficient, for [section] 2254(d) applies when a "claim," not a component of one, has been adjudicated.[39]

> Section 2254(d) also applies where a state court does not explicitly

---

[36]     *Overton v. Newton*, 295 F.3d 270, 276 (2d Cir. 2002) (quoting *Jones v. Stinson*, 229 F.3d 112, 119 (2d Cir. 2000)).

[37]     *Francis v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000) (quoting *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 889 (3d Cir. 1999)).

[38]     *See Harrington v. Richter*, 562 U.S. 86, 98 (2011).

[39]     *Id.* (citing, *inter alia*, *Sellan v. Kuhlman*, 261 F.3d 303, 311–12 (2d Cir. 2001) ("[W]hen a state court fails to articulate the rationale underlying its rejection of a petitioner's claim, and when that rejection is on the merits, the federal court will focus its review on whether the state court's ultimate decision was an unreasonable application of clearly established Supreme Court precedent." (quotation marks and citation omitted))).

state in its opinion that it is adjudicating a claim on the merits.[40]  "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."[41]

The deferential standard of review created by the AEDPA also extends to state-court factual determinations.  Such determinations are presumed to be correct, and the petitioner must rebut them by clear and convincing evidence.[42]

**B.     Exhaustion Requirement**

Section 2254 provides that a habeas petition by a state prisoner may not be granted unless "the applicant has exhausted the remedies available in the courts of the State."[43]  In order to satisfy this exhaustion requirement, a prisoner must have "'fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts,'"[44] either in the form of "explicit constitutional arguments" or simply by "alleging facts that fall

---

[40]     *See id.*

[41]     *Id.* at 99.

[42]     *See* 28 U.S.C. § 2254(e)(1).

[43]     *Id.* § 2254(b)(1)(A).

[44]     *Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001) (quoting *Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981)).

'well within the mainstream of constitutional litigation.'"[45] Fair presentation of a claim, for exhaustion purposes, includes petitioning for discretionary review in the state's highest appellate court.[46] However, "a federal habeas court need not require that a claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred."[47] In such cases, a district court may deem the claims to be exhausted.[48]

When a habeas petition under the AEDPA contains both exhausted and unexhausted claims, a district court "can offer the petitioner 'the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted claims.'"[49] A district court may also

---

[45] *Levine v. Commissioner of Corr. Servs.*, 44 F.3d 121, 124 (2d Cir. 1995) (quoting *Dave v. Attorney Gen.*, 969 F.2d 186, 192 (2d Cir. 1982) (en banc)).

[46] *See O'Sullivan v. Boerckel*, 526 U.S. 838, 847–48 (1999); *see also Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005) (stating that in New York, exhaustion requires that a "criminal defendant . . . first appeal his or her conviction to the Appellate Division, and then . . . seek further review of that conviction by applying to the Court of Appeals for a certificate granting leave to appeal").

[47] *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997).

[48] *See id.*

[49] *McKethan v. Mantello*, 292 F.3d 119, 122 (2d Cir. 2002) (quoting *Rose v. Lundy*, 455 U.S. 509, 510 (1982)).

deny a petition on the merits, even if it contains unexhausted claims.[50]  The

Supreme Court has noted that "plainly meritless" claims should be denied on the

merits rather than dismissed for failure to exhaust.[51]  Finally, in limited

circumstances, a district court may stay a mixed petition and hold it in abeyance

until it has been properly presented to the state courts.[52]

### C.    Procedural Bar

Under the adequate and independent state ground doctrine, if the last

state court to render judgment clearly and expressly states that its judgment rests

on a state procedural bar, federal habeas review is precluded.[53]  Even if the state

court alternatively rules on the merits of the federal claim, federal habeas review is

precluded if an adequate and independent state ground would bar the claim in state

court.[54]  Federal habeas review of procedurally barred claims is foreclosed unless

---

[50]      *See* 28 U.S.C. § 2254(b)(2).

[51]      *Rhines v. Weber*, 544 U.S. 269, 277 (2005) (noting that in light of the discretion to deny unexhausted claims on the merits, the decision to stay a habeas petition to allow a petitioner to exhaust plainly meritless claims would be an abuse of discretion).

[52]      *See id.* at 277–78.

[53]      *See Jones v. Duncan*, 162 F. Supp. 2d 204, 210 (S.D.N.Y. 2001) (citing *Jones v. Vacco*, 126 F.3d 408, 415 (2d Cir. 1997)).

[54]      *See, e.g.*, *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *Garcia v. Lewis*, 188 F.3d 71, 72–82 (2d Cir. 1999); *Glenn v. Bartlett*, 98 F.3d 721, 724–25 (2d Cir. 1996).

the prisoner can demonstrate either (1) "'cause for the default and actual prejudice;'" or (2) "'that failure to consider the claims will result in a fundamental miscarriage of justice.'"[55]  To show cause for a default, a prisoner must put forth some objective factor, external to the defense, explaining why the claim was not previously raised.[56]  The Supreme Court has provided little guidance as to what constitutes "prejudice," but it can be inferred that prejudice is shown when the claim, if proven, would bear on the petitioner's guilt or punishment.[57]  The fundamental miscarriage of justice exception to the procedural bar rule is available only upon a showing of actual innocence.[58]  Finally, a habeas petitioner may not avoid the exhaustion requirement by waiting until federal habeas review to bring claims properly raised in state court.  If such claims would be procedurally barred

---

[55]   *Glenn*, 98 F.3d at 724 (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).  *Accord Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Epps v. Commissioner of Corr. Servs.*, 13 F.3d 615, 617–18 (2d Cir. 1994).

[56]   *See Restrepo v. Kelly*, 178 F.3d 634, 638 (2d Cir. 1999).

[57]   *See Banks v. Dretke*, 540 U.S. 668, 671 (2004) (stating that "prejudice within the compass of the 'cause and prejudice' requirement exists when suppressed evidence is 'material' for *Brady* purposes" (quoting *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999))).

[58]   *See Murray v. Carrier*, 477 U.S. 478, 496 (1986) ("[W]e think that in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default.").

on the state level, they are deemed exhausted and procedurally defaulted for the purposes of federal habeas review.[59]

**D.     Sufficiency of the Evidence**

The Due Process Clause of the Fourteenth Amendment prohibits conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [the defendant] is charged."[60]  A habeas corpus petitioner is therefore entitled to relief when the federal court determines that "upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt."[61]  The evidence must be viewed in the light most favorable to the prosecution.[62]

In New York, a person is guilty of attempted murder in the second degree when the People prove that he or she intentionally engaged in conduct which tends to effect the commission of the death of another person.[63]  A person is guilty of criminal possession of a weapon in the second degree when the People

---

[59]     *See Coleman*, 501 U.S. at 735 n.1; *see also Woodford v. Ngo*, 548 U.S. 81, 92–93 (2006).

[60]     *In re Winship*, 397 U.S. 358, 364 (1970).

[61]     *Jackson v. Virginia*, 443 U.S. 307, 324 (1979).

[62]     *See id.* at 319.

[63]     NYPL §§ 110, 125.25(1).

prove that he or she possessed a loaded firearm with the intent to use it unlawfully against another person.[64]  The jury may infer intent from the criminal act itself, or from "the defendant's conduct and the surrounding circumstances."[65]

### E.   Ineffective Assistance of Counsel

To establish a claim of ineffective assistance of counsel, a petitioner must show that: (1) his attorney's performance fell below "an objective standard of reasonableness" under "prevailing professional norms" and (2) that he suffered prejudice as a result of that representation.[66]  Both elements must be proven by the petitioner to assert a valid claim.  When considering the first factor, a court must apply a "strong presumption" that counsel's representation fell within the "wide range" of reasonable professional assistance.[67]  "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."[68]

---

[64]    *See id.* § 265.03(1).

[65]    *People v. Bracey*, 14 N.Y.2d 296, 301 (1977).

[66]    *Strickland v. Washington*, 466 U.S. 668, 687–88, 693–94 (1984).

[67]    *Id.* at 689.  *Accord Bell v. Cone*, 535 U.S. 685, 697-98 (2002).

[68]    *Strickland*, 466 U.S. at 690.  *Accord Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) ("In assessing the attorney's performance, a reviewing court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' and may not use hindsight to second-guess his strategy choices.") (quoting *Strickland*, 466 U.S. at 690).

"Even if a defendant shows that particular errors of counsel were unreasonable . . . the defendant must show that they actually had an adverse effect on the defense."[69]  Thus, to establish prejudice

> [t]he [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.[70]

In other words, "[i]t is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'"[71]

Finally, the order of analysis of the two *Strickland* prongs – performance and prejudice – is at the discretion of the court.  As explained by the Supreme Court:

> [T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.  In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.  The object of an ineffectiveness claim is not to grade counsel's performance.  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be

---

[69]    *Strickland*, 466 U.S. at 693.

[70]    *Id.* at 694.

[71]    *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 693).

followed.[72]

Accordingly, if a court finds that there is no prejudice, it need not reach the

performance prong.[73]

### F.    Requests for Discovery

Under the Rules Governing Section 2254 Cases in Federal District

Courts ("Habeas R."), district courts may "authorize a party to conduct discovery

under the Federal Rules of Civil Procedure and may limit the extent of

discovery."[74]  In contrast with the usual civil litigant, a habeas petitioner "is not

entitled to discovery as a matter of course."[75]  Instead, the district court has

discretion to determine whether and to what extent to allow discovery "for good

cause shown . . . but not otherwise."[76]  Good cause exists where "specific

allegations before the court show reason to believe that the petitioner may, if the

facts are fully developed, be able to demonstrate that he is entitled to relief. . . . [I]t

is the duty of the court to provide the necessary facilities and procedures for an

---

[72]      *Strickland*, 466 U.S. at 697.

[73]      *See Farrington v. Senkowski*, 214 F.3d 237, 242 (2d Cir. 2000)
(stating that courts need not resolve the *Strickland* performance prong if the
prejudice prong is more readily resolved).

[74]      Habeas R. 6(a).

[75]      *Bracy v. Gramley*, 520 U.S. 899, 904 (1997).

[76]      *Id.* (quoting Habeas R. 6(a)).

adequate inquiry."[77]

## IV.    DISCUSSION

### A.    Claim One:  Verdict Not Supported by the Evidence

Before looking to the merits of Hudyih's first claim, I must determine whether it is procedurally barred.  On direct appeal to the Appellate Division, Hudyih requested relief on this same issue.[78]  The Appellate Division found that "[Hudyih's] challenge to the legal sufficiency of the evidence regarding his defense of justification is unpreserved for appellate review" and that even "viewing the evidence in the light most favorable to the prosecution, we find that it was legally sufficient to establish [Hudyih's] guilt beyond a reasonable doubt."[79]  The New York Court of Appeals denied leave to appeal and did not provide a reasoned decision.[80]  Because the last-reasoned state court ruling decided Hudyih's claim on an independent and adequate state procedural ground, Hudyih is procedurally barred from asserting this claim on a federal habeas petition.

Hudyih cannot overcome the procedural bar because there was no

---

[77]    *Id.* at 908–09.

[78]    *See* Appellant Br. at 30.

[79]    *See Hudyih*, 876 N.Y.S.2d at 157.

[80]    *See Hudyih*, 13 N.Y.3d 797.

cause and no manifest miscarriage of justice.[81]  *First*, Hudyih does not assert that any relevant objective factor, external to his defense, interfered with his ability to comply with the state's procedural rule.[82]  Put simply, nothing prevented Hudyih from preserving this claim for appellate review in the state courts.  *Second*, Hudyih has shown no fundamental miscarriage of justice.[83]  In essence, Hudyih argues that Richie made many contradictory statements and that these statements were insufficient to support the verdict beyond a reasonable doubt.  But this Court cannot determine the credibility of witnesses; questions of fact are jury determinations.  Furthermore, this Court must view the evidence in the light most favorable to the prosecution.[84]  A rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the evidence presented.  For these reasons, Hudyih's First Claim is denied.

> **B.    Claim Two: The Trial Court's Ruling to Preclude a Defense Witness Deprived Hudyih of the Right to Present Evidence**

At trial, both Hudyih and Richie described an incident at a Dunkin

---

[81]    *See Glenn*, 98 F.3d at 724 (citation omitted) (quotation marks omitted).

[82]    *See Restrepo*, 178 F.3d at 638.

[83]    *Accord Hudyih*, 876 N.Y.S.2d at 157–58.

[84]    *See Jackson*, 443 U.S. at 319, 324.

Donuts restaurant that had occurred before the shooting.[85]  Hudyih testified that

Richie attacked and injured a man who was yelling at other people.[86]  Richie

testified that he only pushed the yelling man down and that Hudyih assaulted the

yelling man.[87]  Hudyih now alleges that the trial court wrongfully refused trial

counsel's request to call a witness to the disputed event.  Hudyih sought to elicit

testimony that the witness saw Richie act violently and hoped that this testimony

would aid Hudyih's justification defense, reinforcing his claim that Richie was a

danger to Hudyih at the time of the shooting.  The Appellate Division rejected

Hudyih's appeal on this issue, noting that the evidence was not reasonably related

to the crime that Hudyih was charged with, and, in any case, that the evidence

would have been cumulative.[88]

        Because the critical issue for a justification defense is the defendant's

state of mind, not the victim's,[89] testimony that Richie attacked the yelling man

would have disclosed nothing relevant to the jury.  It would only shed light on the

---

[85]     The date of this incident is not mentioned in the Record.

[86]     *See* Pet. at 12.

[87]     *See id.* at 17.

[88]     *See Hudyih*, 876 N.Y.S.2d at 156.

[89]     *See People v. Miller*, 39 N.Y.2d 543, 551–52 (1976); *see also People
v. Wagman*, 471 N.Y.S.2d 147, 148 (2d Dep't 1984).

-19-

witness's perception of *Richie's* violence or non-violence; the witness could not have spoken to Hudyih's state of mind.  Potential testimony from the witness would have been irrelevant and immaterial to Hudyih's defense.[90]  Therefore, Hudyih had no right to introduce it.  The trial court's decision to preclude the witness did not violate Hudyih's constitutional rights.  Therefore, Claim Two of the Petition is denied.

### C.    Claim Three:  Hudyih's Sentence Was Harsh, Excessive, or Both

Hudyih's third claim is also procedurally barred because it was not preserved for appeal.[91]  Under New York law, in order to preserve an objection to the sentence, Hudyih had to object in the trial court at the time of sentencing.[92] The parties do not dispute that Hudyih did not do so.

Any contention that Hudyih could overcome the procedural bar because of cause and prejudice or manifest miscarriage of justice is unavailing.[93] The trial court considered the appropriate statutory factors when sentencing

---

[90]     *Cf. Washington v. Texas*, 388 U.S. 14, 23 (1967) (reversing conviction on the ground that petitioner was denied the right to examine at trial the only other witness to the crime).

[91]     *See Hudyih*, 876 N.Y.S.2d at 157–58 (citing *People v. Pena*, 50 N.Y.2d 400 (1980)).

[92]     *See* NYCPL § 470.05(2).

[93]     *See Hudyih*, 876 N.Y.S.2d at 156.

Hudyih to a higher sentence than that which he was offered during plea negotiations.[94]  Further, a plea offer does not entitle Hudyih to a lesser sentence merely because the State made such an offer.[95]  Nor is Hudyih's sentence disproportionate to the crime for which he was convicted.[96]  Thus Claim Three of the Petition is denied.

### D.     Claim Four:   Ineffective Assistance of Appellate Counsel

Before trial, the trial judge denied — with leave to renew — the People's request for permission to introduce evidence about Hudyih's relationship with Richie, which involved the sale of illicit drugs, and about the rift that had recently developed between them.  Trial counsel successfully argued that the testimony was speculative and highly prejudicial.[97]  During Richie's cross-

---

[94]     *See id.*

[95]     *See id.* (citing *People v. Evans*, 792 N.Y.S.2d 124, 126 (2d Dep't 2005)); *People v. Hinton*, 728 N.Y.S.2d 177 (2d Dep't 2001).

[96]     *See, e.g.*, *People v. Henry*, 911 N.Y.S.2d 164, 165 (2d Dep't 2010) (up to 25-year term for attempted murder in the second degree and criminal possession of a weapon in the second degree); *People v. Kuey*, 588 N.Y.S.2d 650 (2d Dep't 1992), *aff'd*, 83 N.Y.2d 278 (1994) (up to 25-year term for attempted murder in the second degree, 15 years for assault in the first degree, and 15 years criminal possession of a weapon in the second degree, to run concurrently); *People v. Davis*, 489 N.Y.S.2d 97 (2d Dep't 1985) (up to 15-year term for attempted murder in the second degree and criminal possession of a weapon in the second degree).

[97]     *See* 3/17/06 Hearing Transcript ("Hr'g Tr.") at 40, 46–47, 54.

examination, trial counsel sought to impeach Richie with evidence regarding his

inconsistent statements to the police.  The People renewed their motion, arguing

that Richie should be able to explain his inconsistent statements.  The court stated

that if the defense continued with the same line of questioning, the court would

instruct the witness that he may answer the questions despite the court's pre-trial

ruling.[98]  After the court asked trial counsel if he would like to repeat the question,

trial counsel continued asking questions about the nature of the relationship and

related dispute.[99]  The court then instructed Richie that he could answer trial

counsel's questions.  Hudyih now alleges that his trial counsel's decision to

continue the line of questioning was ineffective representation under the *Strickland*

standard, and thus appellate counsel should have raised the issue of trial counsel's

inadequate representation on appeal.

Because the Supreme Court has affirmed that appellate counsel need

not raise every colorable issue,[100] unless Hudyih can show that appellate counsel's

---

[98]     *See* Appellant Br. at 17.

[99]     *See id.* at 18.

[100]     *See Jones v. Barnes*, 463 U.S. 745, 754 (1983) ("For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the very goal of vigorous and effective advocacy . . . ."); *Mayo*, 13 F.3d at 533 ("Although the *Strickland* test was formulated in the context of evaluating a claim of ineffective assistance of trial counsel, the same test is used with respect to

decisions fell below an objectively reasonable standard and that such decisions had an adverse effect on the outcome, Hudyih's petition will fail.[101]  When considering this issue, a district court must presume that appellate counsel made an objectively reasonable decision absent a showing to the contrary.[102]  But even setting that presumption aside, a fair review of the Record confirms that appellate counsel's decision was a strategic one commensurate with good appellate practice and therefore is "virtually unchallengeable."[103]  For example, in a letter to Hudyih, appellate counsel stated, "I do not believe it helpful to raise as an issue ineffective assistance of counsel, as it appears that your attorney's representation of you was not so deficient as to justify this as an issue."[104]  A few months later, appellate counsel reiterated his belief to Hudyih: "I frankly do not believe [ineffective assistance of counsel] is an issue worthy of submitting to the Appellate Division.  I believe it best to focus on the stronger arguments . . . it will assist the court on [sic]

_____

appellate counsel.").

[101]    *See Strickland*, 466 U.S. at 689–90.

[102]    *See id.* at 690.

[103]    *Strickland*, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . .").

[104]    2/25/08 Letter from Douglas Martino, Appellate Counsel, to Hudyih, Ex. F to Respondent's Exs., at 2.

-23-

focusing on the most important issues."[105]

Far from inadequate representation, appellate counsel's letters demonstrate that he made a strategic choice to not raise the ineffective assistance claim. The Supreme Court has recognized this as effective advocacy. For example, in *Smith v. Murray*, the Court noted that the "process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy."[106] Appellate counsel's letters describe the very same tactical strategy that the Supreme Court applauded as effective.

In support of his petition for inadequate assistance of *appellate* counsel, Hudyih relies on *People v. Duke*, where the defendant-appellant alleged inadequate assistance of *trial* counsel.[107] In *Duke*, the trial lawyer made several bewildering decisions, which together amounted to inadequate assistance of counsel.[108] Here, Hudyih alleges only one wrong decision by appellate counsel,

---

[105]    6/5/08 Letter from Martino to Hudyih ("6/5/08 Martino Ltr."), Ex. F to Respondent's Exs., at 2.

[106]    477 U.S. 527, 536 (1986) (quotation marks omitted) (citation omitted).

[107]    395 N.Y.S.2d 200 (1st Dep't 1982).

[108]    *See id.* at 201 ("[W]e are at a loss to understand what the defendant was to gain by the extensive cross-examination of the police witnesses . . . . Surely

and that decision was in no way inadequate — a far cry from the circumstances in
*Duke*.  Instead, appellate counsel here made the objectively reasonable choice to
pursue the arguments with the strongest chance of success.[109]  Additionally,
appellate counsel demonstrated an understanding of the relevant facts and law on
all the points raised in Hudyih's appellate brief.[110]  An independent review of the
briefs and exhibits before this Court shows nothing to suggest that appellate
counsel's actions fell below an objectively reasonable standard.  Accordingly,
Claim Four of the Petition is denied.

### E.    Claim Five:  Ineffective Assistance of Trial Counsel

Hudyih alleges that his trial counsel did not perform forensic tests on
available samples of Richie's blood, which allegedly would have confirmed that
Richie was intoxicated at the time of the shooting.  Hudyih argues that this

---

this could not have been properly brought out on direct examination by the
prosecution. . . . Another example of the ineptness of counsel is found in her action
in calling a suspended police officer to the stand as a witness for the defense,
without ever having questioned him with reference to the testimony he would give.
. . . An examination of the summation discloses that, to say the least, it was weak,
ineffective and of no help to the defendant. It leaves one with the impression that it
was, in effect, an argument for the conviction of the defendant.").

[109]    *See Smith*, 477 U.S. at 534 ("[A] deliberate, tactical decision not to
pursue a particular claim is the very antithesis of the kind of circumstance that
would warrant excusing a defendant's failure to adhere to a State's legitimate rules
for the fair and orderly disposition of its criminal cases.").

[110]    *See generally* Appellant Br.

evidence would have supported his own testimony and justification defense and would have undermined Richie's credibility.  Hudyih originally brought this ineffective assistance of trial counsel claim in County Court, Westchester County under NYCPL § 440.10.  The Court denied the motion on procedural grounds because section 440.10 requires that appeals, including those claiming ineffective assistance of trial counsel, be brought directly when such claims are based on matters in the Record.[111]  The Appellate Division denied Hudyih's leave to appeal, making the County Court's opinion the last-reasoned state court decision on Claim Five.  Therefore the ruling that Hudyih defaulted on this claim is an independent and adequate state ground that procedurally bars this Court from hearing Claim Five.[112]

Hudyih cannot overcome the procedural bar because he cannot show cause for his failure to raise the claim on direct appeal or a fundamental miscarriage of justice.  *First*, Hudyih does not assert that any relevant objective factor, external to his defense, interfered with his ability to comply with the state's procedural rule.[113]  Put simply, nothing prevented Hudyih from timely asserting his

---

[111]     *See* 5/25/11 Coram Nobis Decision & Order ("Coram Nobis Decision"), Ex. L to Respondent's Exs., at 2–3.

[112]     *See Coleman*, 501 U.S. at 730.

[113]     *See Restrepo*, 178 F.3d at 638.

claim for the ineffective assistance of trial counsel in the state courts.  Hudyih was aware that he could file a supplemental brief with the Appellate Division on direct appeal if he wished to preserve his ineffective assistance of trial counsel claim.[114] He did not do so.

      *Second*, Hudyih has shown no fundamental miscarriage of justice. Even if the requested evidence demonstrated that Richie was intoxicated at the time of the shooting, in light of all the evidence that both parties submitted to the jury, Hudyih could not meet the actual innocence standard that the Supreme Court requires to prevail on this Petition.[115]  For example, Richie testified that he was a cocaine user, that he sometimes drank alcohol, and that he had been arrested four times previously.[116]  Hudyih's counsel cross-examined Richie regarding his drug use, the allegation that Richie had been on a drug binge prior to the shooting, and the allegation that Richie had been awake for twenty-four hours before the shooting.[117]  The jury also heard testimony from Hudyih alleging that Richie was

---

[114]    *See*  6/5/08 Martino Ltr. at 2 ("[Y]ou are, of course, free to raise this argument [ineffective assistance of trial counsel] in your supplemental brief.").

[115]    *See Schlup*, 513 U.S. 298, 327 (1995) ("[T]he petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.").

[116]    *See* Appellant Br. at 13.

[117]    *See* Coram Nobis Decision at 4.

high on cocaine at the time of the shooting[118] and testimony regarding the inconsistent statements Richie made to police and medical staff after the shooting.[119]  In other words, trial counsel made significant efforts at attacking Richie's credibility — in part by broaching topics that the trial court had ordered foreclosed in an earlier *Ventimiglia* Hearing.[120]  As a result, the trial court reversed its earlier order and allowed Richie to explain his prior inconsistent statements, including his agreement to sell narcotics with Hudyih.[121]  In light of these thorough examinations, the jury could fairly weigh the credibility of Richie and Hudyih.  Considering this evidence, a reasonable jury could have easily found him guilty, even if there were additional evidence of Richie's drug use.

The blood tests that Hudyih now alleges trial counsel should have performed would only provide further bases on which to attack Richie's credibility — standing alone the tests could not exonerate Hudyih.  Accordingly, even if the blood test results showed that Richie was intoxicated at the time of the shooting,

---

[118]    *See id.* at 27.

[119]    *See id.* at 8.

[120]    The trial court conducts a *Ventimigilia* hearing to determine the admissibility of the defendant's prior uncharged crimes.  *See* 34 N.Y. Jurisprudence 2d Criminal Law: Procedure § 2492.

[121]    *See* Tr. at 339–341.

this would still be insufficient to show that Hudyih was actually innocent.[122]

To the extent that Hudyih alleges inadequate representation of trial counsel because his counsel elicited testimony from Richie that was barred by the trial court, this claim is also procedurally barred as it was not raised in the state court on direct appeal. Further, there is no fundamental miscarriage of justice because it is overwhelmingly likely that the absence of this evidence would not have resulted in a different verdict. The jury still would have known, for example, that Hudyih shot Richie three times and that, although the men were not on good terms, Hudyih called to meet Richie late at night before the shooting occurred. The jury also would have heard conflicting testimony from both Hudyih and Richie about the events immediately prior to the shooting. In sum, Hudyih has not made the requisite showing of actual innocence because this is not the "extraordinary case" where a constitutional violation has likely resulted in the conviction of an actually innocent person. Accordingly, Claim Five of the Petition is denied.

### F.    Requests for Discovery

Hudyih makes two requests: (1) Richie's blood-test results from samples taken on or about April 12, 2005 and (2) medical reports indicating that Richie ingested drugs, alcohol, or both on the night of April 12, 2005. He contends

---

[122]    *See Murray*, 477 U.S. at 496.

that either record would show whether Richie was intoxicated on the night of the shooting.  If so, Hudyih concludes, this evidence would have damaged Richie's credibility to such an extent that the jury would have believed Hudyih's justification defense.

        For the same reasons just discussed, Hudyih's requests for discovery are denied.  Even if Hudyih acquired the evidence that he requests and it showed that Richie was intoxicated at the time of the incident, such evidence has limited relevance — it relates only to Richie's credibility.  As discussed, the issue of Richie's intoxication and drug use was explored at trial.  Additional evidence on this issue would not likely have affected the verdict.

## V.    CONCLUSION

        For the foregoing reasons, the Petition and requests for discovery are denied.  The remaining issue is whether to grant a certificate of appealability ("COA").  For a COA to issue, a petitioner must make a "substantial showing of the denial of a constitutional right."[123]  A "substantial showing" does not require a petitioner to show that he would prevail on the merits, but merely that reasonable jurists could disagree as to whether "the petition should have been resolved in a different manner or [whether] the issues presented were 'adequate to deserve

---

[123]    28 U.S.C. § 2253(c)(2).

encouragement to proceed further.'"[124]  Petitioner has made such a showing on his

claim for ineffective assistance of trial counsel based on trial counsel's failure to

obtain Richie's blood test results or a test of Richie's blood-stained clothing.  Thus,

I grant a COA.  The Clerk of the Court is directed to close this Petition and this

case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            July 1, 2015

---

[124]    *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (quotation marks omitted) (citation omitted)). *Accord Middleton v. Attorneys Gen. of the States of New York and Pennsylvania*, 396 F.3d 207, 209 (2d Cir. 2005) (denying COA where reasonable jurists could not debate whether the district court's dismissal of the petition was correct).

**- Appearances -**

**Petitioner (Pro Se):**

Rashad Hudyih, No. 06A4618
Shawangunk Correctional Facility
P.O. Box 700
Wallkill, New York 12589

**For Respondent:**

Lisa M. Denig
Assistant District Attorney, Westchester District Attorney's Office
111 Dr. Martin Luther King, Jr. Blvd
White Plains, New York 10601
(914) 995-4457